**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **KIMBERLY-CLARK CORPORATION,** |
| **Plaintiff,** |
| **v.** |
| **THE DISTRICT OF COLUMBIA,** *et al.*, |
| **Defendants.** |

Civil Action No. 17-1901 (JEB)

## MEMORANDUM OPINION

Lurking beneath this city's streets lies a purported scourge of our sewer system: nonwoven disposable wipes. While unwitting consumers might blithely flush baby or facial wipes down the toilet, little do they know, those wipes may bind together in the subterranean realm, creating plumbing clogs of substantial proportions. And when they do, Defendants District of Columbia and the D.C. Water & Sewer Authority must clean up the mess. The District has thus understandably embarked on a "Protect Your Pipes" campaign, encouraging consumers to rethink their flushing habits. The question in this case is how far it can go in enlisting wipes manufacturers to help fight that battle.

Specifically, the city recently enacted a law that limits when a manufacturer can market its wipes as flushable. The Act includes a three-part standard for "flushability"; if a company's wipes flunk that test, it must clearly and conspicuously label that the product "should not be flushed." D.C. Law 21-220 § 3(b). The problem? Plaintiff Kimberly-Clark Corporation has allegedly engineered certain of its wipes to be flushable and currently markets them as such. It fears the Act may compel it to say otherwise and has moved for a preliminary injunction to prevent enforcement thereof. Because the Court agrees that the Act likely treads impermissibly

on Plaintiff's First Amendment rights, it will grant the injunction. As the District is still in the process of promulgating regulations to implement the Act, the Court will subsequently reassess whether the injunction remains appropriate once those regulations become final.

## I.    Background

### A.    The Nonwoven Disposable Products Act

On March 24, 2017, the District of Columbia enacted the Nonwoven Disposable Products Act of 2016.  The Act targeted a hobgoblin of D.C. pipes — *viz.*, nonwoven disposable wipes, which include "wet wipes used for personal hygiene, baby wipes, facial tissues . . . ."  District Opp., Exh. B, Committee Report, Bill 21-833 (Nov. 7, 2016) at 2.   These wipes "are popular for both child and adult use" and, when flushed, "cause serious problems in the [District's] sewer system."  Id.  The Committee Report, in fact, estimated that D.C. Water "pays approximately $50,000 each year to combat issues caused by wipes," and that "[c]logs also pose risks for utility workers, who can suffer physical injuries when cutting and pulling wipes out of mechanical equipment and illness due to exposure to raw sewage."  Id.

The Act addressed two types of products plaguing the District's sewers.  First, it set its sights on wipes that were never intended to be flushable.  As Kimberly-Clark agrees, "[M]any adult customers were using — and then flushing" these wipes, which "were not designed for flushing [and] were not labeled safe for flushing."  ECF No. 15 (Memorandum for PI Mot.) at 3.  The wipes, which Plaintiff describe[s] as "indestructible squares of plastic," "can increase the incidence of plumbing clogs."  Id.  Although some manufacturers labeled that their products "should not be flushed," the District determined that "there [was] no standard way to communicate this message across the industry."  Committee Report at 3.  The D.C. Council also heard testimony that manufacturers often obfuscated labels advising consumers not to flush their

products.  See District Opp., Exh. A, Hearing Record (October 24, 2016) at 14.  As an example, one witness presented baby wipes whose "do not flush" label appeared in small print on the back of the package and was partially obscured by a flap.  Id.  The District sought to impose new guidelines on those manufacturers, compelling them to label their products "clearly and conspicuously."  D.C. Law 21-220 § 3(b).

Second, the city targeted "flushable" wipes, or those that are ostensibly "designed to pass safely through household plumbing and municipal wastewater systems."  PI Memo. at 3.  These products, which constitute about 7% of wipes on the market, are currently labeled and marketed to consumers as "flushable."  Committee Report at 2; see also Hearing Record at 9.  Despite the reassuring labels, the District worried that "'flushable' wipes are contributing to clogs in U.S. sewer systems."  Committee Report at 3.  Although estimates vary as to the toll that these items take on plumbing, testing in other municipalities shows that a "non-negligible amount of material recovered from sewage systems consisted of flushable wipes."  Id.  To wit, wipes labeled as flushable compose an estimated 2% to 8% of the debris in water systems; at the extreme, one study found that they made up 35% of total wipes in the pipes.  Id.  To the District, "any wipe labeled 'flushable' that can be found in a clog after going through the sewer system is inaccurately labeled."  Committee Report at 6.

As to this second category, therefore, the District sought to provide more rigorous standards regarding flushability.  Before the legislation, there was little consensus over the term "flushable."  For example, an industry trade association, the International Nonwovens and Disposables Assocation (INDA), promulgated voluntary guidelines, which required a product to pass seven different tests before being labeled "flushable."  Hearing Record at 10.  Yet the Council also heard testimony from the National Association of Clean Water Agencies

(NACWA), an organization representing 300 public wastewater utilities, that INDA's guidance was inadequate.  Id. at 13.  NACWA promotes the use of a more stringent three-part test, which would require flushable wipes to: 1) break into small pieces quickly; 2) not be buoyant; and 3) not contain plastic or regenerated cellulose and only contain material that will readily degrade in a range of natural environments.  Id.  According to NACWA, other countries adhere to these guidelines, but current U.S. products fall far short of its standards.  Id. at 16.  In a field test, only one product marketed as flushable (a Kimberly-Clark wipe, as it happens) met NACWA's guidelines.  Id.

After evaluating testimony on those competing standards, the District ultimately hewed closely to NACWA's approach.  The final Act defined "flushable" as a nonwoven disposable product that: (1) "[d]isperses in a short period of time after flushing in the low-force conditions of a sewer system"; (2) "[i]s not buoyant"; and 3) "[d]oes not contain plastic or any other material that does not readily degrade in a range of natural environments."  D.C. Law 21-220 § 2(1).  It then prohibited "a manufacturer of a nonwoven disposable product for sale in the District [from] label[ing] the nonwoven disposable product as safe to flush, safe for sewer systems, or safe for septic systems," unless its product met the District's definition of flushable. Id., § 3(a).  The Act also required manufacturers of products that are "not flushable [to] clearly and conspicuously label the . . . product to communicate that [it] should not be flushed."  Id., § 3(b).

The Act empowers the Mayor to "impose civil fines and penalties as sanctions for violations of [its] provisions."  Id., § 4(a).  It also authorized the Department of Energy & Environment to issue rules implementing the terms of the Act, in consultation with D.C. Water. Id., § 5.  Although the Act goes into effect on January 1, 2018, DOEE has not yet promulgated

regulations for its implementation, see ECF No. 34 (Stipulation by District Defendants), which task is expected to take at least a few more months. See District Opp., Exh. D (Declaration of Marc A. Nielson), ¶¶ 4-10 (describing DOEE's regulatory process). Notably, the Act punishes only manufacturers, regardless of their location in or outside of the city, but not any retailer who sells the wipes in the District.

B. Procedural History

Kimberly-Clark is a multinational corporation that creates products for personal care and hygiene. Its brands include such familiar names as Cottonelle®, Scott®, Huggies®, and Kleenex®. See Compl., ¶ 5. Over the past twenty years, it has allegedly invested "millions of dollars" in engineering flushable nonwoven wipes and now has more than 30 patents for such products. Id., ¶ 44. These wipes, it says, are unique: "Unlike baby wipes, which are made from plastics or other synthetic fibers, Kimberly-Clark's wipes are made only from wood pulp — the same substance that is the primary ingredient in toilet tissue." PI Memo. at 4 (citing Compl., ¶ 45). It also uses sodium chloride (i.e., salt) to bind the wood pulp together. Id. It markets those of its wipes using that technology as "flushable," in accordance with INDA's guidelines on the term. Id., ¶¶ 48-50. Plaintiff manufactures all of its wipes outside the District and then sells them to middlemen, who in turn sell them to retailers located in the city. See Compl., ¶¶ 37-38.

On September 15, 2017, Kimberly-Clark filed a Complaint seeking injunctive and declaratory relief to prevent Defendants from enforcing the Nonwoven Disposable Products Act. Id., ¶ 1. Shortly thereafter, it also moved for a preliminary injunction on the same ground. The Court held several conference calls with the parties to assess whether the District might stay enforcement of the Act pending the issuance of its regulations. When this effort bore no fruit,

the Court held oral argument on the PI Motion on December 13, 2017, and this Opinion follows on an expedited basis.

As a preliminary matter, the Court briefly addresses whether all Defendants are properly before it. The Complaint names the District and various city personnel in their official capacities as Defendants, including Mayor Muriel Bowser, Attorney General Karl A. Racine, and DOEE Director Tommy Wells. It also tacks on a more curious party, D.C. Water, which has no authority to implement, enforce, or rescind the Act. Although it is not clear whether this entity belongs in such a suit, no motion to dismiss has been filed. The Court, for the timing being, thus treats the PI Motion as brought against all named Defendants.

## II. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. NRDC, 555 U.S. 7, 24 (2008). A party seeking preliminary relief must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest." League of Women Voters of United States v. Newby, 838 F.3d 1, 6 (D.C. Cir. 2016) (quoting Pursuing America's Greatness v. FEC, 831 F.3d 500, 505 (D.C. Cir. 2016)).

Before the Supreme Court's decision in Winter, courts weighed these factors on a "sliding scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker showing on another. Davis v. PGBC, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009); see Davenport v. Int'l Bhd. of Teamsters, 166 F.3d 356, 360-61 (D.C. Cir. 1999). This Circuit has hinted, though not held, that Winter should be read to abandon the slide-scale analysis, in favor of a "more demanding burden" requiring plaintiffs to independently demonstrate both a likelihood of success on the merits and irreparable harm. Sherley v. Sebelius, 644 F.3d 388, 392-93 (D.C. Cir.

2011) (quoting <u>Davis</u>, 571 F.3d at 1296 (Kavanaugh, J., concurring)); <u>see</u> <u>League of Women</u> <u>Voters</u>, 838 F.3d at 7 (declining to address whether "sliding scale" approach is valid after <u>Winter</u>).

Regardless of the extent to which showings of irreparable harm and success on the merits can be diminished, some fundamentals of the four-factor test bear reiterating. Because "the basis of injunctive relief in the federal courts has always been irreparable harm," <u>Chaplaincy of Full</u> <u>Gospel Churches v. England</u>, 454 F.3d 290, 297 (D.C. Cir. 2006), a plaintiff must, at minimum, "demonstrate that irreparable injury is <u>likely</u> in the absence of an injunction," not just that injury is a "possibility." <u>Winter</u>, 555 U.S. at 21; <u>see</u> <u>Davis</u>, 571 F.3d at 1292. Before and after <u>Winter</u>, similarly, courts in our Circuit have held that a failure to show a likelihood of success on the merits alone is sufficient to defeat the motion. <u>Ark. Dairy Co-op Ass'n, Inc. v. USDA</u>, 573 F.3d 815, 832 (D.C. Cir. 2009) (citing <u>Apotex, Inc. v. FDA</u>, 449 F.3d 1249, 1253-54 (D.C. Cir. 2006)). A plaintiff's showing of likelihood of success and irreparable harm does not end the inquiry; rather, "the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction." <u>Davis</u>, 571 F.3d at 1292.

## III.    Analysis

Kimberly-Clark raises a slew of constitutional challenges to the Act, including violations of the Commerce Clause, the First Amendment, and the Fifth Amendment's Due Process Clause. <u>See</u> Compl., ¶ 2. Before delving into the merits, the Court must take a brief detour to consider — and reject — Defendants' threshold positions that the company lacks standing and that its suit is not ripe for review. <u>See</u> <u>Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83, 101 (1998) ("Article III jurisdiction is always an antecedent question.").

A.    <u>Justiciability</u>

1. *Standing*

While the District does not dispute Plaintiff's standing to challenge the Act, D.C. Water questions whether Kimberly-Clark will suffer any injury-in-fact. It argues that because the parties do not yet know whether the Act applies to Kimberly-Clark, the company lacks standing unless it "assume[s] that its wipes cannot pass any future standard the regulations might set." D.C. Water Br. at 21. The Court can dispose of that argument quickly. In a pre-enforcement suit, "a plaintiff satisfies the injury-in-fact requirement," and thus has standing, "where [it] alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" <u>Susan B. Anthony List v. Driehaus</u>, 134 S. Ct. 2334, 2342 (2014) (quoting <u>Babbitt v. United Farm Workers Nat'l Union</u>, 442 U.S. 289, 298 (1979)). This forgiving standard is satisfied so long as the plaintiff's "intended future conduct is arguably . . . proscribed by [the] statute [it] wish[es] to challenge." <u>Id.</u> at 2344 (alterations in original) (internal quotation marks omitted).

Such is plainly the case here. The Act exists for the specific purpose of targeting products, like Kimberly-Clark's wipes, that are "labeled 'flushable.'" Comm. Report at 2. By its terms, the Act regulates "a product constructed from nonwoven sheets, including moist toilet tissue or cloth, that is designed, marketed, or commonly used for personal hygiene purposes." D.C. Law 21-220 § 2(3). No one disputes that Kimberly-Clark's wipes qualify. Although it is not yet clear whether those wipes will meet the District's definition of "flushable," it is at least "arguable" that they will not, given that the city adopted more stringent standards than industry guidelines (and it is fair to assume that the regulations will map onto the statute in this respect). <u>See</u> <u>Susan B. Anthony List</u>, 134 S. Ct. at 2344. In fact, the Council heard testimony that the Act

would likely preclude almost <u>all</u> products currently on the U.S. market from being labeled

flushable. <u>See</u> Hearing Record at 13 (noting that "[w]ith one possible exception, the so-called

flushable wipes currently on the market in the U.S." did not pass NACWA tests for flushability);

<u>see also</u> <u>id.</u> at 55 ("Wipes are now marketed and sold as 'flushable[,]' [but] most wipes are not

dispersible."). That "credible threat" of civil liability suffices to establish standing. <u>See</u> <u>Susan</u>

<u>B. Anthony List</u>, 134 S. Ct. at 2342.

### 2. *Ripeness*

Defendants next argue that Kimberly-Clark's suit is not ripe, as the District has yet to

promulgate regulations implementing the Act. At its foundation, ripeness is about whether a

federal court "can or should decide a case." <u>Am. Petroleum Inst. v. EPA</u>, 683 F.3d 382, 386

(D.C. Cir. 2012). Courts assess ripeness through a well-worn twofold test, "evaluat[ing] both the

fitness of the issues for judicial decision and the hardship to the parties of withholding court

consideration." <u>Abbott Labs. v. Gardner</u>, 387 U.S. 136, 149 (1967). In this case, Defendants do

little to dispute that this controversy is fit for review, as the First Amendment challenge poses a

"purely legal" question. <u>Id.</u> Of course, because the District's regulations are not yet

promulgated, the Court must make some estimates as to how the law will unfold. But the

inquiry remains fundamentally a question of law.

The parties primarily debate whether the Act will impose any hardship on Kimberly-

Clark. The District argues the negative, noting that it has stipulated that it "will take no action to

enforce" the Act until the "implementing regulations are promulgated and any 'compliance'

period offered by [DOEE]" expires. <u>See</u> Stipulation by District Defendants. It currently

anticipates that such compliance period will last 12 to 18 months. <u>Id.</u> Ordinarily, "[a] law that

cannot be enforced . . . cannot be final for purposes of ripeness review." Zukerberg v. D.C. Bd. Of Elections & Ethics, 999 F. Supp. 2d 79, 87 (D.D.C. 2013).

Appealing as this might seem, the District's reassurances come with a catch: Kimberly-Clark might still incur liability retroactively for products manufactured but not sold during the compliance period. In other words, the statute attaches liability to any non-complying wipes manufactured after January 1, 2018. At oral argument, the District made clear that its "grace period" does not change that trigger date for liability. See Oral Arg. Tr. 35:3-15. Kimberly-Clark could thus still face fines for any wipes manufactured after January 1, 2018, so long as they happened to be sold in the District once the compliance period ends. The company believes it cannot risk manufacturing any non-complying wipes in 2018 because once wipes enter the stream of commerce, it has no control over how long they stay on retailers' shelves. See Compl, ¶ 7. As the Act imposes no liability on retailers for selling mislabeled wipes, see D.C. Law 21-220 § 3, Kimberly-Clark has no guarantee that any wipes manufactured moving forward will be sold within the compliance period.

Unlike in Zukerberg, then, the statute will have "concrete, legally binding effect[s]" as soon as the clock strikes midnight on New Year's Eve. See 999 F. Supp. 2d at 85. The case, as a result, fits squarely within Abbott Laboratories, the Supreme Court's seminal opinion on ripeness. That case, too, dealt with a pre-enforcement challenge to a labeling requirement — namely, that manufacturers of prescription drugs print the "established name" of the drug prominently on its packaging. See 387 U.S. at 138-139. The regulation at issue had taken effect but had yet to be enforced against the petitioners. Id. at 139. The Court nevertheless determined that the petitioners' challenge was ripe for review, relying principally on the fact that the existence of the regulation — even before it had been enforced — placed the petitioners in an

untenable position: "Either they must comply with the [] requirement and incur the costs of changing over their promotional material and labeling or they must follow their present course and risk prosecution." Id. at 152 (quoting Abbott Labs. v. Celebrezze, 228 F. Supp. 855, 861 (D. Del. 1964)). Come January 1, 2018, Kimberly-Clark will face the same dilemma: comply with the labeling requirement, at substantial expense and at the expense of their First Amendment rights, or continue marketing their wipes as flushable, at the risk of civil liability. In such a scenario, the Court can properly reach the merits.

B.     Preliminary-Injunction Factors

Although Plaintiff enumerates five separate counts, it need only satisfy the preliminary-injunction factors on one to prevail. The Court concludes that Kimberly-Clark's First Amendment argument checks all the boxes in that respect, and it therefore declines to reach Plaintiff's positions on the Commerce Clause and Due Process Clause.

*1. Likelihood of Success on Merits*

The Court begins, naturally enough, with the first prong, which asks whether Kimberly-Clark can establish a likelihood of success on its First Amendment challenge. To refresh, the Act includes two key components: section 3(b) requires the company to disclose that its wipes sold in the District "should not be flushed"; as a corollary, section 3(a) forbids Kimberly-Clark from advertising that those wipes can be flushed. See D.C. Law 21-220 § 3 (emphasis added). To prevail, Plaintiff must show that this sort of labeling requirement is likely to violate its free-speech rights.

a.   Scope of Challenge

At the outset, the Court must define the scope of that First Amendment claim: Does Kimberly-Clark challenge the Act on its face or as applied? D.C. Water categorizes the

Complaint as a "facial challenge," which would immediately halt all enforcement of the Act. See D.C. Water Resp. at 22. To mount such an offensive, the company would need to establish "that no set of circumstances exists under which the Act would be valid" — *i.e.*, that the law is unconstitutional in all of its applications. United States v. Salerno, 481 U.S. 739, 745 (1987). "While some Members of the Court have criticized the Salerno formulation, all agree that a facial challenge must fail where the statute has a 'plainly legitimate sweep.'" Wash. St. Grange v. Wash. St. Republican Party, 552 U.S. 442, 449 (2008) (quoting Washington v. Glucksberg, 521 U.S. 702, 739-40 & n.7 (1997) (Stevens, J., concurring in judgments)). In First Amendment cases, the Court has also overturned a law "as impermissibly overbroad because a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." Id. at 449 n.6 (internal quotation marks omitted). No matter its form, however, a facial challenge is "strong medicine" and "disfavored," as it risks "premature interpretations of statutes" and "run[s] contrary to the fundamental principle of judicial restraint." Id. at 449 n.6, 450 (internal quotation marks omitted).

Recognizing as much, Kimberly-Clark wisely conceded at oral argument that the Court need not construe its Complaint as a facial attack in order to afford it full relief. See Oral Arg. Tr. 11:4-7 (agreeing Kimberly-Clark had "no objection" to proceeding "on an as-applied basis that covered [its] products"). Rather, the Court can treat its challenge as applied solely to "the "flushable wipes currently before" it, which were designed to be safely flushed. Id. at 12:16-20. In other words, Plaintiff recognizes that other non-woven disposable products, such as baby wipes, were never intended to be flushable, and it does not question whether the District can require manufacturers of those wipes, including Kimberly-Clark, to say as much. Following suit,

the Court considers only this narrow question: is the Act constitutional as applied to wipes that Kimberly-Clark engineered to be flushable?

### b. Validity of Labeling Requirements

As a starting point, the parties agree that the disputed labels qualify as commercial speech or "expression related solely to the economic interests of the speaker and its audience." Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York, 447 U.S. 557, 561 (1980). Although the First Amendment extends to such speech, the government has a "legitimate interest in protecting consumers from commercial harms." Sorrell v. IMS Health Inc., 564 U.S. 552, 579 (2011) (internal quotation marks omitted). Commercial speech can therefore "be subject to greater governmental regulation than noncommercial speech." Id. (quoting City of Cincinnati v. Discovery Network, 507 U.S. 410, 426 (1993)). While content-based regulations of noncommercial speech are subject to strict scrutiny, see, e.g., Reed v. Town of Gilbert, 135 S.Ct. 2218, 2227 (2015), commercial speech is generally accorded "a lesser protection . . . than other constitutionally guaranteed expression." Central Hudson, 447 U.S. at 563.

Typically, courts subject commercial-speech claims to intermediate scrutiny, as set forth in the Supreme Court's marquee case on the subject, Central Hudson. The District, however, disputes the applicability of even that test here, at least as to section 3(b)'s requirement that manufacturers communicate that their products "should not be flushed." For that provision, the District champions the more "relaxed" standard of review set forth in Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S. 626, 651 (1985), which governs certain disclosure requirements. See Dist. Opp. at 23. At times, the District also suggests that the term "flushable" is misleading commercial speech, which deserves no constitutional protection. Id. at 26-27. It thus believes it is empowered to restrict a manufacturer's use of that

phrase, as it does under section 3(a), without undergoing any scrutiny at all.  Alternatively, it maintains that the Act's restriction can survive Central Hudson's intermediate review.  Id. at 33-36.  The Court discusses each of those three arguments in turn.

i.  Zauderer

In Zauderer, the Supreme Court reasoned that "the First Amendment interests implicated by disclosure requirements are substantially weaker than those at stake when speech is actually suppressed."  471 U.S. at 652 n.14.  After noting that the disclosure requirement in that case involved "purely factual and uncontroversial information," the Court characterized the speaker's interests as "minimal."  Id. at 651.   It held those rights were "adequately protected as long as [such] disclosure requirements are reasonably related to the State's interest in preventing deception of consumers."  Id.  Although there is dispute as to precisely how forgiving Zauderer is, see Am. Meat Institute v. U.S. Dep't of Agriculture, 760 F.3d 19, 26 (D.C. Cir. 2014), the case provides, at minimum, a more "relaxed standard of review."  Nat'l Ass'n of Manufacturers v. SEC (NAM II), 800 F.3d 518, 520 (D.C. Cir. 2015).

The District frames section 3(b) — which requires that manufacturers communicate that their products "should not be flushed" — as the same sort of mine-run "labeling regulation that frequently has been upheld."  Def. Opp. at 1.  Although the city focuses on this disclosure requirement, the same logic would sweep in section 3(a)'s restriction on the term "flushable." The D.C. Circuit recently affirmed that disclosure rules may — and "often do" — "incidentally prohibit speech, because the requirement to say one thing necessarily means the speaker cannot say the opposite."  Pursuing America's Greatness v. FEC, 831 F.3d 500, 508 (D.C. Cir. 2016). In other words, if the District could require manufacturers to advise that their products should not

14

be flushed, it could also prevent them from "turn[ing] around and say[ing]" that those products are flushable.  Id.

The problem for the District is that Zauderer applies only to disclosures of "'purely factual and uncontroversial information' about the good or service being offered."  AMI, 760 F.3d at 27 (quoting Zauderer, 471 U.S. at 651); see also NAM II, 800 F.3d at 527 (seeing "no way to read AMI except as holding" that the disclosure must involve "purely factual and uncontroversial information").  Kimberly-Clark says that the District's labeling requirement, as applied to manufacturers like it, flunks that test.  See PI Mot. at 36-37.

So what does it mean for a disclosure to be "purely factual and uncontroversial"?  Nobody knows exactly.  The D.C. Circuit has "made no attempt to define those terms precisely," NAM II, 800 F.3d at 528 (citation omitted), and "it is unclear how [courts] should assess . . . whether a mandatory disclosure is controversial."  AMI, 760 F.3d at 34 (Kavanaugh, J., concurring in the judgment).  But from limited precedent on this issue, the Court can discern several outer bounds: a disclosure requirement is "purely factual" when there is no dispute about factual accuracy.  Take AMI itself.  There, the FDA sought to require meat producers to label the country of origin for their products.  Id. at 20-21.  Although the requirement was certainly controversial in the sense that those manufacturers preferred to omit that information, the plaintiffs nonetheless never questioned whether the labels would be factually accurate.  Id. at 27.  No debate could be had, for instance, about whether a piece of meat came from an animal raised in Canada or the United States.  There was thus "no claim that [the labels] [were] controversial in that sense."  Id.  Likewise, no one questions the federal government's ability to require purely factual "nutrition labels," such as a product's calorie count or sugar content.  Id. at 31 (Kavanaugh, J., concurring).

By contrast, a disclosure <u>is</u> "controversial" if it is "inflammatory," such as a proposed FDA warning for cigarette packages that was designed to "evoke emotion . . . and browbeat consumers into quitting." <u>R.J. Reynolds Tobacco, Co. v. FDA</u>, 696 F.3d 1205, 1216-17 (D.C. Cir. 2012), <u>overruled on other grounds by</u> <u>AMI</u>, 760 F.3d at 22. Likewise, a label is controversial if it suggests products are "ethically tainted," such as an SEC requirement that certain diamond retailers disclose that their products had "not been found to be 'DRC conflict-free.'" <u>NAM II</u>, 800 F.3d at 530 (citation omitted).

Most relevantly, a requirement can be controversial because it expresses "a matter[] of opinion," <u>Zauderer</u>, 471 U.S. at 651, or relates to a "dispute about simple factual accuracy." <u>AMI</u>, 760 F.3d at 27. Even the dissent in <u>NAM II</u> agreed that a label is controversial when there is "disagree[ment] with the truth of the facts required to be disclosed." 800 F.3d at 537 (Srinivasan, J., dissenting) (quoting <u>AMI</u>, 760 F.3d at 27) (alteration in original). The government, for example, could not compel companies to "state that their products are not 'environmentally sustainable' or 'fair trade,'" if the companies "vehemently disagreed that their [products] were 'unsustainable' or 'unfair.'" <u>Id.</u> at 530 (alteration in original); <u>see also</u> <u>id.</u> at 541 (Srinivasan, J., dissenting) ("[T]he unelaborated label 'environmentally unsustainable' . . . would not count as 'purely' factual because it continues fundamentally to come across as a matter of opinion.").

Such is the case here. Kimberly-Clark "vehemently disagrees" that its wipes "should not be flushed." PI Mot. at 37. Indeed, that is what this suit is fundamentally about. The company designed its wipes to be flushable and "strongly believes" it did so successfully. <u>Id.</u> Yet the Act would suppress that view, while simultaneously compelling Plaintiff to announce that its wipes "should not be flushed." D.C. Law 21-220 § 3(b). That requirement is hardly a "disclosure" of

undisputed facts; rather, whether the wipes can be flushed — and the harms they might cause to sewers — is subject to serious debate. True, terms like "environmentally sustainable" or "fair trade" may leap out as more controversial to the layperson. As it turns out, however, the term "flushable" carries its own baggage. Surprising as it may be, "flushability" is a lightning rod for those in the know, and the District itself pitches this case as involving a long-running "dispute over the proper definition of 'flushable.'" District Opp. at 2-4; see also id. at 3 (highlighting "debate on [the] divergent standards" of flushability between industry and environmental groups). On the one hand, corporations like Kimberly-Clark favor INDA's approach, which treats wipes as flushable even if they do not fully disperse underground. On the other, NACWA espouses a more rigorous definition, requiring wipes to dissolve within thirty minutes. While the District is free to pick sides in that battle, it cannot force Kimberly-Clark to be the messenger for its position, at least without surviving intermediate scrutiny.

Admittedly, the city has not yet promulgated regulations implementing the Act, and it is therefore not entirely clear what Kimberly-Clark's label must include. Some requirements, of course, might be harder to swallow than others. For instance, DOEE might mandate that Kimberly-Clark disclose: "The District has found these wipes do not comply with the NACWA definition of flushable." Or it might simply require a warning that flushing the wipes "contributes in non-negligible amounts to clogs in sewer systems." Either fact-based warning could well avoid the above questions about accuracy and, therefore, might be appropriate for review under Zauderer. At this stage, however, the Court can look only to the statute for guidance. That Act provides that companies must affix a "clear[] and conspicuous[]" label that the product "should be not be flushed." D.C. Law 21-220 § 3(b). On its face, the statute thus seems to require Kimberly-Clark to warn consumers, without qualification, not to flush its wipes.

The legislative history supports that interpretation.  Originally, the Act would have required manufacturers to employ a "Do Not Flush" label.  See Committee Report at 4. The final version allowed "additional flexibility to use logos or other images" that communicate the same message.  Id.  Such a logo might appear as follows:



Hearing Record at 14 (witness approvingly citing this emblem).  Those type of warnings or logos do not present "facts"; they simply advise the consumer about what to do with a product.  Such an unqualified stance against flushing would run headlong into Kimberly-Clark's views on how its product can be disposed.  It is therefore inappropriate for the Zauderer framework.

The District resists that conclusion, but its arguments to the contrary are unpersuasive.  First, it contends that the phrase "should not be flushed" is factual, at least when backed by a statutory definition.  That is, it believes that so long as the statute supplies a standard for flushability, it does not matter whether Plaintiff disputes the underlying methodology.  See Opp. at 29 (citing Mass. Ass'n of Private Career Schs. v. Healey, 159 F. Supp. 3d 173, 198 (D. Mass. 2016)).  Defendants argues that "[a]t worst, the language would elicit some uncertainty about its meaning, which would just direct the reader to the statutory definition."  Id. at 30 (quoting NAM II, 800 F.3d at 539 (Srinivasan, J., dissenting)).

Unfortunately for the city, however, the majority in NAM II felt differently.  It held that a statutory definition could not save a disputed term, as otherwise "there would be no end to the government's ability to skew public debate by forcing companies to use the government's preferred language."  800 F.3d at 530.  In any event, even the dissent agreed that "a statement that immediately rings as a matter of opinion (*e.g.*, 'this product is environmentally unsustainable,') would remain outside the fold of Zauderer even if it were reconceptualized as factual in a statutory definition (*e.g.*, a product qualifies as 'environmentally unsustainable' if, as a factual matter, it releases *x* units of ozone in *y* hours)."  Id. at 541 (Srinivasan, J., dissenting).  A label that declares wipes "should not be flushed" or one warning, "Do Not Flush!" thus does not become factual simply because the statute provides standards for those terms.

The District fares no better in arguing that a "factual disclosure does not reflect an opinion merely because it compels a speaker to convey information contrary to its interest."  Opp. at 29 (quoting Grocery Mfrs. Ass'n, 102 F. Supp. 3d at 629-30).  It is true that the FDA, for instance, could require Hostess to disclose the calorie count of Twinkies®, even if the company's marketing arm might prefer otherwise.  But it cannot require that company to tell consumers its sugary treat "should not be eaten" nor ban it from labeling that product "edible."  In other words, while a disclosure can be contrary to the company's interest, it cannot constitute an opinion nor run afoul of the company's reasonable understanding of the facts unless it survives Central Hudson review.

Other courts have regularly struck down disclosure requirements that "promote[] policies or views that are . . . expressly contrary to the corporation's views."  Am. Beverage Ass'n v. City & Cty. of San Francisco, 871 F.3d 884, 894 (9th Cir. 2017) (internal quotation marks omitted).  In American Beverage, for example, the Ninth Circuit considered a local ordinance that would

require sugar-sweetened beverages to include the following warning: "Drinking beverages with added sugar(s) contributes to obesity, diabetes, and tooth decay. This is a message from the City and County of San Francisco." Id. at 888. While San Francisco presented expert testimony to support its view, the plaintiff corporations marshalled competing evidence that sugar-sweetened beverages could be healthily consumed as part of a balanced diet. Id. at 895-96. Given that "reasonable dispute," the Court of Appeals held Zauderer inapplicable to that disclosure. Id. at 895. The warning went too far, it reasoned, by requiring "the Associations to convey San Francisco's disputed policy views." Id. at 896. This was so even though the label expressly attributed the views to the municipality. Id. at 888; see also Video Software Dealers Ass'n v. Schwarzenegger, 556 F.3d 950, 953 (9th Cir. 2009), aff'd sub nom., Brown v. Entm't Merchs. Ass'n, 564 U.S. 786 (2011) (holding that California's requirement to label video games as "violent" was unconstitutional because it did "not require the disclosure of purely factual information[,] but compels the carrying of the State's controversial opinion"). So, too, in this case. Kimberly-Clark's good-faith "disagree[ment] with the truth of the facts required to be disclosed" renders the District's labeling requirement controversial. See AMI, 760 F.3d at 27.

But wait, the District says. What if DOEE ultimately concludes that Kimberly-Clark's wipes are compliant with the Act? In that case, the company would face no disclosure requirement, and no "controversy" would exist about the District's definition of flushable. While that happy ending may yet come to pass, nothing in the statute requires it to be so. Under the Act's terms, Kimberly-Clark might need to advise its consumers that its wipes "should not be flushed," no matter how reasonable its belief to the contrary. Indeed, the D.C. Council anticipated exactly that outcome: it heard testimony that the Act would likely preclude almost all products currently on the U.S. market from being labeled flushable. See Hearing Record at 16.

So long as the Act includes no carve-out for these manufacturers, they must include the District's preferred messaging or face a real risk of enforcement. As that message is not "purely factual and uncontroversial," such a disclosure regime must survive at least intermediate scrutiny under Central Hudson.

### ii.    Misleading Speech

Before turning to that scheme, the Court pauses to discuss a variant argument offered by the District. At times, the city seems to suggest that Kimberly-Clark's use of the word "flushable" might be misleading, at least insofar as those wipes do not satisfy the District's definition of that term. In such a scenario, it says, it could ban the word "flushable" without infringing any First Amendment interests. While it is true that the First Amendment does not cover "inherently" or "actually" misleading commercial speech, see Pearson v. Shalala, 164 F.3d 650, 655 (D.C. Cir. 1999), the District does not seriously argue that the word "flushable" is misleading in those ways. Just as it is controversial whether Kimberly-Clark's wipes "should not be flushed," it is debatable whether they are "flushable." That controversy, however, does not render the label misleading. Should consumers share Kimberly-Clark's definition of flushable, the advertising is spot on. At most, then, the word "flushable" is "potentially misleading" for consumers who share the District's conception of the term. Id. But "potentially misleading" speech, like other commercial speech, is still subject to Central Hudson. Id. at 655-656.

### iii.    Central Hudson

The appropriate standard now determined, the Court can analyze the interests at stake. Under Central Hudson, the government must show 1) a substantial interest that 2) its restriction directly and material advances and 3) that the regulation is not "more extensive than is necessary to serve that interest." 447 U.S. at 566. As to the first prong, the District posits that "nonwoven

disposable products — including wet wipes — cause serious problems in [its] sewer system."
Opp. at 31. Its substantial interest thus lies in "combatting consumer deception and decreasing
the amount of non-flushable materials found in the District's sewer system, which may result in
serious health and safety risks for utility workers and costly repairs." Id. at 32. It also maintains
that its labeling requirements "directly advance" that interest, as wipes labeled as "flushable"
were found in appreciable quantities in its sewers. Id. at 33. Changing the label, it believes,
could effectively deter consumers from such behavior. Id.

Kimberly-Clark assails each of those arguments. First, it questions whether the financial
toll from wet wipes, which the District variously estimates as between $50,000-$500,000, could
constitute a "substantial interest," particularly in relation to D.C. Water's $535.8 million budget.
See PI Memo. at 11. Second, it claims that the District has failed to supply evidence that
restrictions on "flushable" wipes would serve its ends. Indeed, Kimberly-Clark contends that the
Act might be counter-productive, as it would leave consumers unable to distinguish between
wipes designed to be flushable and those that are not. Left with fewer "flushable" options,
consumers might just throw out the baby with the bath water and flush all wipes without
discriminating.

The Court need not resolve either debate. Even assuming *arguendo* that the District is
correct on those prongs, it would still trip on the final hurdle: its regulation is not narrowly
tailored to its ends. To explain why, the Court must decouple the Act's two labeling
requirements, each of which must survive intermediate scrutiny. First, the District required
manufacturers to disclose that their wipes "should not be flushed," unless those wipes satisfied a
three-part test for flushability. See D.C. Law 220-21 § 3(b). Second, as a corollary, it prohibited
manufacturers from labeling those wipes as flushable. Id. § 3(a). Perhaps inadvertently, the city

argues only that the latter requirement passes intermediate scrutiny. It makes no case that section 3(b)'s disclosure requirement could satisfy Central Hudson's final prong. In any event, the Court discusses each restriction, determining that neither passes muster.

SECTION 3(B): DISCLOSURE REQUIREMENT

Although the government need not choose the "least restrictive means" of achieving its goals, there must be a "reasonable fit" between means and ends. See Bd. of Trustees of St. Univ. of New York v. Fox, 492 U.S. 469, 480 (1989). Critically here, "[t]he government cannot satisfy that standard if it presents no evidence that less restrictive means would fail." Nat'l Ass'n of Manufacturers v. SEC (NAM I), 748 F.3d 359, 372 (D.C. Cir. 2014), overruled on other grounds by AMI, 760 F.3d at 22-23.

In NAM I, the D.C. Circuit considered the SEC's mandate that manufacturers disclose whether their materials had been found to be "DRC conflict-free." Id. at 375. The plaintiffs there suggested that "rather than the 'conflict free' description the statute and rule require[d], issuers could use their own language to describe their products, or the government could compile its own list of products that it believes are affiliated with the Congo war." Id. at 372. Although the Commission asserted that those proposals would be "less effective," the Court concluded that the agency had "failed to explain why (much less provide evidence that) the Association's intuitive alternatives to regulating speech would be any less effective." Id. at 373; see also NAM II, 800 F.3d at 524 (affirming original decision's reasoning in that respect).

The District's disclosure requirement suffers from the same flaw. The city might have published a centralized list of products considered flushable and promoted that list in conjunction with its ongoing "Protect Your Pipes" outreach campaign. Or it might have chosen an alternative, less restrictive disclosure requirement, such as one that expressly tied the "Do Not

23

Flush" warning to the District's factual findings (*e.g.*, "The District has found these products cannot be safely flushed.") or one that provided a more nuanced view on the product's flushability (*e.g.*, "Flushing this wipe contributes to clogs in the sewer system."). Plaintiff agrees that it would be less restrictive, for example, if the District required it to carry a "Protect Your Pipes" logo and encouraged consumers to learn more at a District website. Of course, the city was not required to employ any of those alternatives, nor must it select the least restrictive means to achieve its goal, but it needed to at least <u>consider</u> whether some alternative might suffice. After reviewing the statutory text and legislative history — including the Hearing Record, a videotape of the Hearing, and the Committee Report — the Court sees no effort in that regard.

SECTION 3(A): BAN ON "FLUSHABILITY"

That leaves section 3(a), which banned the use of the word "flushable." Once again, there is no evidence that the District considered alternatives to its labeling requirement, much less that it gathered evidence that any such measures would be less effective. And once again, such a one-track mind is fatal under <u>Central Hudson</u>. <u>See</u> <u>NAM I</u>, 748 F.3d at 372.

Ordinarily, the "preferred remedy" for potentially misleading speech is "more disclosure, rather than less." <u>Pearson</u>, 164 F.3d at 657. The D.C. Circuit has accordingly manifested a strong preference for affixing disclaimers to potentially misleading speech, rather than banning the use of the term. <u>Id.</u> In <u>Pearson</u>, for instance, the FDA sought to bar dietary supplements from making health-related claims unless it found "significant scientific agreement" among experts. <u>Id.</u> at 651. The Court of Appeals struck down the requirement, finding that the FDA should at least have considered disclaimers instead. <u>Id.</u> at 657-660.

In this case, there is no evidence that the District considered a disclaimer in lieu of a ban on the word "flushable." Instead, it apparently thought that prohibiting the term "flushable" was

necessary to make its disclosure requirement, outlined in section 3(b), workable. That is, the D.C. Council concluded that "for a disclosure regarding 'non-flushable' products to be effective[,] . . . a concomitant restriction on labeling those same products as 'flushable' is needed; otherwise the two terms will work at cross-purposes . . . and the Act will accomplish nothing." Dist. Opp. at 35; see also Oral Arg. 44:1-8 ("assuming . . . that the disclosure . . . is appropriate," it would not "accomplish much at all" without "a restriction on [the] use of the term 'flushable.'").

The District's arguments might find traction were its disclosure requirement constitutional. As explained above, disclosure rules "often . . . incidentally prohibit speech, because the requirement to say one thing necessarily means the speaker cannot say the opposite." Pursuing America's Greatness v. FEC, 831 F.3d 500, 508 (D.C. Cir. 2016). In other words, if the District could require manufacturers to advise that their products should not be flushed, it could also prevent them from labeling those products as flushable. Id. But, as explained above, the District gave little thought to whether it needed that disclosure requirement in the first place. Had it so considered, perhaps the city would have found an alternative to the disclosure requirement, and perhaps then use of the term "flushable" would not be so counterproductive to its scheme. Perhaps not. The important point, again, is that the District made no such effort.

In its briefing on this question, the District offers little in the way of counter-argument. It claims that the Act is narrowly tailored because it does not "ban claims of 'flushability'" when a product complies with its statutory definition, nor does it prohibit manufacturers from providing supplemental information. See District Opp. at 35-36. That may be so. But the fact that the Act is not the most restrictive means possible does not absolve the District from considering less restrictive means. Defendants do not face a particularly demanding burden in that regard, but

they must present at least some "evidence that less restrictive means would fail." NAM I, 748 F.3d at 372. For the reasons described above, they have fallen short of meeting that burden.

* * *

The Court therefore holds that Kimberly-Clark is likely to succeed on its First Amendment challenge. That is not to say, however, that the District's "Protect Your Pipes" campaign is a pipe dream. As noted above, the Court's holding is limited to a certain subset of Kimberly-Clark wipes, which it designed and believes to be flushable. The city may thus continue to regulate other wipes, such as baby wipes, which disintegrate less readily. The D.C. Council heard testimony that those wipes constitute 93% of all nonwoven disposable products, see Hearing Record at 9, and even NACWA conceded that these "non-flushable" products were the main source of the District's sewer woes. Id. at 14.

The Court also acknowledges the possibility that the regulations, whenever promulgated, might change the game, particularly if the District tailored its disclosure requirement to satisfy the "factual and uncontroversial" prong of Zauderer. The D.C. Council, moreover, might consider alternatives to its current labeling requirement; if it were to collect evidence that those efforts would be less effective, it could impose the same restrictions and stand a better chance of surviving Central Hudson scrutiny. All the Court holds today is that the statute, in its current form, is likely unconstitutional as applied to Kimberly-Clark's flushable wipes.

2. *Remaining Factors*

"In First Amendment cases, the likelihood of success 'will often be the determinative factor' in the preliminary injunction analysis." Pursuing America's Greatness, 831 F.3d at 511 (quoting Joelner v. Vill. of Wash. Park, Ill., 378 F.3d 613, 620 (7th Cir. 2004)). That is because "[t]he loss of First Amendment 'freedoms, for even minimal periods of time, unquestionably

constitutes irreparable injury.'" Id. (quoting Mills v. District of Columbia, 571 F.3d 1304, 1312 (D.C. Cir. 2009)); see also Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality opinion) (same); Pearson v. Shalala, 130 F. Supp. 2d 105, 119 n.31 (D.D.C. 2001) (seeing no reason to draw distinction between commercial and other types of speech for purposes of irreparable harm). Because this Court finds that Plaintiff has a likelihood of success on the merits, it also necessarily decides that the company would suffer irreparable harm were the Act to take effect — namely, the deprivation of its First Amendment rights.

The District questions whether Kimberly-Clark can show any "imminent harm at all, given the rulemaking process and enforcement plans described by DOEE." District Opp. at 41. As explained above, however, the city concedes that it might still attach retroactive liability for wipes manufactured after January 1, 2018. Kimberly-Clark thus faces an imminent decision as to whether to change its labels or expose itself to civil penalties. That Hobson's choice impinges on Plaintiff's First Amendment freedoms and therefore constitutes irreparable harm.

The remaining two factors follow along the same lines. When a court "see[s] likely success" in a First Amendment challenge, it should "view more favorably [the plaintiff's] arguments regarding . . . the balance of the equities[] and the public interest." Pursuing America's Greatness, 831 F.3d at 511. As to the first, the Court must weigh the harm to Kimberly-Clark if there is no injunction against the harm to the District if there is. Id. "And in this case, the [District's] harm and the public interest are one and the same, because the government's interest is the public interest." Id.; see also Nken v. Holder, 556 U.S. 418, 435 (2009) (holding that, in the context of stay, the balance-of-equity and public-interest prongs "merge when the Government is the opposing party").

The District contends that a preliminary injunction will undermine its (and the public's) interest in "preventing consumer deception and the costly deterioration of its sewer system." Dist. Opp. at 43. At this stage, however, an injunction is not particularly disruptive. The District has yet to enact regulations and has stipulated that it will not enforce the Act until, at the earliest, those regulations are issued. Indeed, it expects to provide companies with an additional 18-24 months' grace period. In the interim, it professes an interest only in preserving retroactive liability for any wipe manufactured after January 1, 2018. Those wipes might still remain on the shelves in two years, and the District anticipates logistical hurdles in distinguishing between wipes based on manufacture date. See Oral Arg. Tr. 37: 17-19. The problem with that theory is that the District already must make that distinction, as the Act only applies to wipes manufactured after January 1, 2018. So the city's regulators must still check to see if a wipe was manufactured on, say, December 28, 2017. The marginal costs imposed by checking for wipes manufactured on, for example, January 2, 2018, is not so steep as to tip the equities in its favor.

C.   Remedy

Last but not least: the question of remedy. In its Motion, Kimberly-Clark requests a "preliminary injunction enjoining defendants from implementing or enforcing the Act pending the entry of final judgment on Kimberly-Clark's constitutional claims." PI Memo. at 45. At oral argument, however, Plaintiff agreed that it would receive sufficient relief if the Court enjoined the District from enforcing the Act as to its "flushable" wipes. See Oral Arg. Tr. 11:4-7; id. at 12:16-20; id. at 55:5-18. Because the Court considers Kimberly-Clark's suit as an as-applied challenge, it will impose the injunction only as to wipes that Kimberly-Clark engineered and believes to be flushable.

True, that remedy stops short of "all the relief" Plaintiff requested and might receive, for instance, from its Commerce Clause challenge. <u>See</u> <u>Nw. Austin. Mun. Utility Dist. No. One v. Holder</u>, 557 U.S. 193, 205-206 (2009). A win on that ground could invalidate the statute as applied to all manufacturers outside the District (and all their wipes, whether flushable or not). But as Kimberly-Clark recognized at oral argument, it cares little about whether the statute remains intact, so long as its own flushable wipes are safe from civil liability. <u>See</u> Oral Arg. Tr. 12:16-20. Ever wary of needlessly deciding constitutional questions, the Court thus rules solely on First Amendment grounds, without reaching Plaintiff's positions on the Commerce Clause or Due Process. <u>Cf.</u> <u>NW. Austin</u>, 557 U.S. at 205-206 (declining to reach constitutional issues when plaintiff's counsel indicated during oral argument that relief on statutory grounds would suffice).

Plaintiff also agreed that the Court might revisit whether an injunction is necessary after the District issues regulations implementing the Act, so long as it gives notice before dissolving any injunction. <u>See</u> Oral Arg. Tr. 56:12-24 (indicating that Kimberly-Clark would be "satisfied" with that relief). In other words, for the time being, Kimberly-Clark may safely manufacture flushable wipes without fear of any retroactive liability. Finally, the Court will hold a status hearing promptly after issuance of the regulations and may reconsider the injunction (and Plaintiff's other constitutional challenges) at that time.

**IV.      Conclusion**

For the foregoing reasons, the Court finds that a preliminary injunction as applied to

Kimberly-Clark's flushable wipes is appropriate here.  The injunction will remain in effect until

further Order of the Court.  A separate Order consistent with this Opinion will be issued this day.

IT IS SO ORDERED.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  December 22, 2017